UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

MATTHEW BRANDON,

           Petitioner,                      Case No. 1:17-cv-149

v.                                             Honorable Paul L. Maloney

SHERRY BURT,

           Respondent.

_____/

## REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Matthew Brandon is incarcerated with the Michigan Department of Corrections at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan. On July 2, 2014, a Kent County Circuit Court jury found Petitioner guilty of being a felon in possession, MICH. COMP. LAWS § 750.224f, carrying a concealed weapon, MICH. COMP. LAWS § 750.227, and possession of a firearm during the commission of a felony (felony firearm), MICH. COMP. LAWS § 750.227b. On July 30, 2014, the court sentenced Petitioner as a fourth-offense felony offender, MICH. COMP. LAWS § 769.12, to terms of two to five years on both the felon-in-possession and carrying-concealed convictions, and a consecutive two year term on the felony-firearm conviction.

On February 8, 2017,[1] Petitioner filed his habeas corpus petition raising two grounds for relief, as follows:

---

[1] Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). For purposes of this Report and Recommendation, I have given Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

> I. [PETITIONER'S] CONSTITUTIONAL RIGHT TO DUE PROCESS OF LAW, US CONST, AM, XIV; CONST 1963, ART I, SECTION 17, WAS VIOLATED WHEN THE EVIDENCE OF CARRYING A CONCEALED WEAPON, FELON IN POSSESSION OF A WEAPON, AND FELONY FIREARM WAS LEGALLY INSUFFICIENT TO CONVICT HIM OF THOSE OFFENSES AT TRIAL.
>
> II. THE TRIAL COURT ABUSED ITS DISCRETION BY NOT RULING ON TRIAL COUNSEL'S REQUEST TO EXCUSE THE JURY PANEL AND POOL AND [PETITIONER] WAS DENIED HIS CONSTITUTIONAL RIGHT TO BE TRIED BY A FAIR AND IMPARTIAL JURY.  US CONST, AMEND VI; CONST 1963, ART 1 § 20.

(Pet., ECF No.1-1, PageID.8.)  Respondent has filed an answer to the petition (ECF No. 5) stating that the grounds should be denied because they are procedurally defaulted and/or lack merit.  Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are meritless.  Accordingly, I recommend that the petition be denied.

## Discussion

### I. Factual allegations

The instant case arose from a traffic stop of a vehicle on February 8, 2014, from which Petitioner, a passenger in the vehicle, ran.  While running, Petitioner apparently lost his cell phone and discarded a pistol.  Petitioner was charged with the three offenses on which the jury found Petitioner guilty, and, following a preliminary examination on February 21, 2014, he was bound over on those charges.  (Prelim. Exam. Tr., ECF No. 6-2, PageID.118.)  Petitioner subsequently was charged with being a fourth-offense felony offender, to which he ultimately pleaded guilty.

During jury selection, a later-seated juror was asked if he had heard the earlier voir dire questions.  In response, the juror stated that defense counsel had "defended my daughter . . . in Wyoming court, and I don't think he treated her fairly." (T. Tr. I, ECF No. 6-3, PageID.144.)

2

Defense counsel immediately sought a sidebar, and the juror was excused for cause. The court took a recess, and defense counsel moved to excuse the entire panel. Counsel contended that the jury had been tainted by the juror's statement and that counsel believed that the statement could not be cured and would prevent his client from getting a fair trial. Defense counsel indicated that he would investigate what representation he had provided to the juror's daughter. (*Id.*) The prosecutor responded that disparaging remarks against police officers or attorneys occasionally occurred and did not necessarily taint the panel. (*Id.*, PageID.144-145.) The court took a recess, but when it returned, it simply resumed voir dire, without placing on the record a ruling on the motion. (*Id.*) Somewhat later, defense counsel, in questioning a new juror, made a brief reference to not remembering the juror who had previously complained about defense counsel's performance in the juror's daughter's case. Defense counsel again asked for a sidebar, which was held. (*Id.*, PageID.146.) Notwithstanding the court's failure to expressly rule on the motion on the record, defense counsel subsequently twice expressed satisfaction with the jury. (*Id.*, PageID.148-149.)

    Grand Rapids Police Canine Officer Todd Wuis testified that he had been an officer for fourteen years and a canine officer for two years at the time of his testimony, and he was a relatively new handler at the time of the incident in question. His police dog was named Boris. According to Wuis, he received three or four calls a night that required a canine. (T. Tr. I, ECF No. 6-3, PageID.159.) At approximately 9:00 p.m. on February 8, 2014, Wuis pulled over a small, red vehicle in the area of Cherry and Charles Streets, because it did not appear to have a license plate. Due to the snow on the back window of the vehicle, Wuis was unable to see the temporary paper license plate. When the vehicle pulled over, the front passenger door opened, and a black male dressed in black jumped out, began running north on Cherry Street, and continued north on Packard Street. Wuis called out for the man to stop, but Wuis needed to remain with the driver

and the vehicle. Wuis radioed other officers to advise them of the man running and to seek backup. Three to five minutes later, after other officers arrived to assist, Wuis removed Boris from the cruiser, placed him in a tracking harness, and began to track the suspect from the sidewalk next to the stopped car. (*Id.*, PageID.159-160, 164.) Boris indicated that he had picked up a good scent, and he began pulling hard at the lead, heading north along Packard until they reached 124 Packard. At the driveway of that house, they turned onto fresh snow showing one set of fresh tracks. When they came to a 6-foot privacy fence, Boris indicated that he wanted to climb over. Because of the snow, however, Boris could not jump it. Wuis therefore picked Boris up and over the fence before joining him. At this point, Boris was tracking the scent, but Wuis could see that they were following fresh footprints. They arrived at 716 Lake Drive shortly after Petitioner was taken into custody by Officer Snyder. (*Id.*, PageID.161.) After arriving at the arrest site, Officer Wuis backtracked to look for anything that might have been dropped. He directed Boris to "port," or search the ground for items with fresh human scent. As they walked back along the same route to the site of the stop, they discovered a cell phone dropped on the sidewalk, which they picked up. Boris continued to search the same area excitedly, before pushing his snout into a snowbank and then indicating to Wuis. Wuis looked into the hole being dug and saw the handle of a handgun in the snowbank, just a couple of feet from where he found the phone. (*Id.*, PageID.162.) The gun was photographed where it was found, but the phone was not. (*Id.*, PageID.162, 165.) Petitioner admitted to Wuis that he was the person who ran from the vehicle and that the phone was his. (*Id.*, PageID.163, 165-166.)

Grand Rapids Police Officer Andrew Snyder testified that he was on patrol duty the night of February 8, 2014. He heard that Officer Wuis had made a traffic stop and had reported that the passenger, an African American man dressed in black, had run from the vehicle. Snyder

was nearby at the time. (*Id.*, PageID.155.)  Snyder drove west on Lake Drive, looking for the man described.  As he looked up the driveway at 716 Lake Drive, he saw someone or something dark, lying on the walkway in the fresh snow.  Snyder stopped and shone his spotlight, causing him to see it was a man dressed in black, who started to stand up.  Snyder jumped out of his vehicle, and, as the man began to rise, Snyder drew his weapon and took the man into custody.  Snyder identified Petitioner as the man he arrested.  After arresting Petitioner, Snyder walked along to driveway, to see if he could discover if something had been discarded.  As he was doing that, the canine team came through the backyard of 716 Lake Drive, along obviously fresh tracks in the snow.  Petitioner initially denied having run from the vehicle.  However, after a cell phone was discovered, Petitioner acknowledged that the phone was his. (*Id.*, PageID 156.)

Grand Rapids Police Detective Case Weston testified that he followed up on the recovery of the gun.  He personally took DNA swabs both from the recovered gun and from Petitioner.  He conveyed both to the crime lab, along with the gun itself.  The lab reported that the gun was operable, but the lab could not recover latent prints from the weapon or cartridges.  Weston received a DNA report from Krik Deleeuw, the DNA agent at the Michigan State Police. (*Id.*, 170-171.)

Kirk DeLeeuw testified as an expert in DNA and serology. (T. Tr. II, ECF No. 6-4, PageID.179.)  DeLeeuw processed the reference samples he received from the gun and from Petitioner. (*Id.*, PageID.180.)  He reported that he was unable to obtain sufficient DNA information from the handgun to establish a DNA profile.  He compared what he had to the DNA profile he obtained from Petitioner's swab.  DeLeeuw testified that the comparison was inconclusive because of the poor DNA sample from the gun. (*Id.*)

Grand Rapids Police crime-scene technician Kyle Grant testified that he was asked to process a scene near Cherry and Charles Streets on February 8, 2014. He photographed a gun that was in a snow bank. The cell phone had already been picked up, but he placed a marker where officers told him the phone was found. The marker was five or six feet away from the gun. Grant identified the photograph. Grant also processed the gun for fingerprints, using the superglue-fume method. He found no usable latent prints. (*Id.*, PageID.184.)

After less than two hours' deliberation, the jury found Petitioner guilty of carrying a concealed weapon, being a felon in possession, and felony firearm. (*Id.*, PageID.197-198.) At the sentencing hearing held on July 30, 2017, Petitioner maintained his innocence of the offense and requested leniency. (Sentencing Tr., ECF No. 6-5, PageID.201.) Because Petitioner was on parole at the time of the offense, the court sentenced him to imprisonment for two years on the felony-firearm conviction, to be served consecutively to the offenses for which he was on parole. In addition, the court sentenced Petitioner to the statutory maximum of two to five years' imprisonment on each of the other two charges, without adding time for Petitioner being a fourth-offense felony offender, to be served consecutively to the felony-firearm sentence, but concurrently with one another. (*Id.*)

Petitioner appealed his convictions to the Michigan Court of Appeals. In the brief filed by counsel on March 1, 2015, Petitioner raised the two grounds presented in the instant petition. (Def.-Appellant's Br. on Appeal, ECF No. 6-6, PageID.221.) Petitioner filed a supplemental brief on appeal, adding a claim that his felony-firearm sentence should not run consecutively to the carrying-concealed sentence. (Def.-Appellant's Supp. Br. on Appeal, ECF No. 6-6, PageID.239.) In an unpublished opinion issued on April 21, 2016, the court denied relief on the first two grounds, but found the sentencing claim supported. It therefore affirmed the

convictions, but remanded the case to the trial court for correction of the sentence to provide that Petitioner's felony-firearm sentence ran concurrently with the carrying-concealed conviction. (Mich. Ct. App. Op.,ECF No. 6-6, PageID.203-206.)

Petitioner filed an application for leave to appeal to the Michigan Supreme Court, again raising the two grounds presented to the court of appeals, but adding a claim that trial counsel rendered ineffective assistance of counsel. (Pet'r's Appl. for Leave to Appeal, ECF No. 6-7, PageID.279.) On December 13, 2016, Petitioner filed his initial petition in this Court, raising the three issues he raised in the Michigan Supreme Court. By opinion, order, and judgment entered January 17, 2017, the Court dismissed the initial petition for failure to exhaust. (*Brandon v. Burt*, No. 1:16-cv-1433 (W.D. Mich.), ECF Nos. 4, 5, 6.) Instead of returning to the state courts to exhaust his ineffective assistance of counsel claim, Petitioner filed the instant petition raising only the two exhausted claims.

## II. AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 135 S. Ct at 1376 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (internal quotations omitted).

8

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

### III.    Ground I: Sufficiency of the Evidence

In his first ground for habeas relief, Petitioner argues that the prosecutor presented insufficient evidence to support his convictions for all three offenses. Specifically, he alleges that the prosecution failed to present sufficient evidence that he possessed a firearm, a necessary element of all three offenses.

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319. Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case: First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan [trial court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc) (quoting *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008)). This standard erects "a nearly insurmountable hurdle" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Id*. at 534 (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

The Michigan Court of Appeals thoroughly addressed the issue as follows:

> Defendant first argues that there was insufficient evidence to support his convictions of CCW, felon-in-possession, and felony-firearm because the prosecution was unable to establish that he possessed a firearm. On appeal, this argument was raised both by counsel and by defendant in his Standard 4 brief. Counsel challenges only the element of possession with respect to each of the charged offenses. Defendant, in his Standard 4 brief, additionally challenges the element of concealment for his CCW conviction.
>
> A challenge to the sufficiency of the evidence is reviewed de novo. *People v Hawkins*, 245 Mich App 439, 457; 628 NW2d 105 (2001). We review the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could find that the essential elements of the crime were proven beyond a reasonable doubt. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748, amended 441 Mich 1201 (1992). Circumstantial evidence and reasonable inferences arising from the evidence can be satisfactory proof of the elements of a crime. *People v Carines*, 460 Mich 750, 757; 597 NW2d 130 (1999). "It is for the trier of fact, not the appellate court, to determine what inferences may be fairly drawn from the evidence and to determine the weight to be accorded those inferences." *People v Hardiman*, 466 Mich 417, 428; 646 NW2d 158 (2002). "All conflicts in the evidence must be resolved in favor of the prosecution." *People v Kanaan*, 278 Mich App 594, 619; 751 NW2d 57 (2008).

Under MCL 750.227, a CCW conviction requires proof beyond a reasonable doubt that a defendant either knowingly possessed a concealed weapon, *People v Hernandez-Garcia*, 477 Mich 1039, 1040 n 1; 728 NW2d 406 (2007), or knowingly carried a weapon, whether concealed or otherwise, in a vehicle operated or occupied by the defendant, *People v Nimeth*, 236 Mich App 616, 622; 601 NW2d 393 (1999). A felon-in-possession conviction requires proof beyond a reasonable doubt that a defendant (1) possessed a firearm, (2) was previously convicted of a felony, and (3) had not been restored of the right to possess a firearm. MCL 750.224f. Finally, a felony-firearm conviction requires proof beyond a reasonable doubt that a defendant possessed a firearm during the commission or attempted commission of a felony. MCL 750.227b; *People v Avant*, 235 Mich App 499, 505; 597 NW2d 864 (1999).

Viewing the evidence in a light most favorable to the prosecution, *Wolfe*, 440 Mich at 515, the evidence was sufficient to enable a rational jury to find beyond a reasonable doubt that defendant possessed a firearm. Possession of a firearm can be constructive. *People v Johnson*, 293 Mich App 79, 83; 808 NW2d 815 (2011). "[A] defendant has constructive possession of a firearm if the location of the weapon is known and it is reasonably accessible to the defendant." *People v Burgenmeyer*, 461 Mich 431, 438; 606 NW2d 645 (2000) (quotation marks and citation omitted). A weapon is reasonably accessible if a defendant possessed it while he committed or attempted to commit a felony. *Id.* at 438-439. Whether an individual possessed a firearm is a question of fact that can be established by circumstantial evidence and reasonable inferences arising therefrom. *People v Strickland*, 293 Mich App 393, 400; 810 NW2d 660 (2011).

On February 8, 2014, defendant ran from a traffic stop. After defendant's flight, a police canine searched for defendant and established the route that he traveled from the traffic stop. Responding officers apprehended defendant and found his cell phone lying on a snow-covered sidewalk along the route he had taken. Defendant admitted that he usually kept his cell phone in his coat pocket. While conducting a second search of the route less than an hour after defendant fled, the police canine discovered a firearm located in a snowbank approximately two to six feet from where the officer found defendant's cell phone. On the basis of this evidence, a rational jury could infer that defendant ran from the traffic stop while in possession of a firearm, stopped to hide the firearm, and dropped his cell phone in the process. See *People v Goodin*, 257 Mich App 425, 432; 668 NW2d 392 (2003) ("[E]vidence of flight is admissible to support an inference of 'consciousness of guilt.'"); see also *People v Cutchall*, 200 Mich App 396, 401; 504 NW2d 666 (1993), overruled on other grounds by *People v Edgett*, 220 Mich App 686; 560 NW2d 360 (1996) ("[D]efendant's flight becomes part of a seamless web of evidence that a rational trier of fact could employ to find the elements of the crime proven beyond a reasonable doubt."). Therefore, the evidence supported that defendant knew of the firearm's location. Further, the firearm was reasonably accessible to defendant because he possessed it at the time he ran from the traffic stop and placed it in the snowbank. See *Burgenmeyer*, 461 Mich at 436.

> Accordingly, the evidence presented was sufficient for a rational jury to find beyond a reasonable doubt that defendant was in constructive possession of the firearm, contrary to his argument on appeal.
>
> The evidence was also sufficient to support defendant's CCW conviction. The evidence established that defendant ran from the vehicle as soon as the officer initiated the traffic stop. After the police apprehended defendant, they located a handgun along with defendant's cell phone in a snowbank along his flight path. A reasonable jury could infer from this evidence that defendant knowingly carried the weapon, whether concealed or otherwise, in a vehicle he operated or occupied. See *Nimeth*, 236 Mich App at 622. A jury could also reasonably infer that defendant knowingly possessed the weapon while it was concealed on or about his person. See *Hernandez-Garcia*, 477 Mich at 1040 n 1. Concealment "occurs when the pistol is not discernible by the ordinary observation of persons casually observing the person carrying it." *People v Kincade*, 61 Mich App 498, 504; 233 NW2d 54 (1975). As evidenced by a video of the traffic stop, no gun was visible on defendant's person at the time he ran from the vehicle, but the police later located the handgun along his flight path. Therefore, a jury could reasonably infer that, because no weapon was discernible on defendant's person when he fled from the traffic stop, the weapon must have been concealed on or about his person before he disposed of it. Viewing this evidence in a light most favorable to the prosecution, *Wolfe*, 440 Mich at 515, we conclude that the evidence was legally sufficient to support defendant's CCW conviction.

(Mich. Ct. App. Op., ECF No. 6-6, PageID.203-205.) Although the court of appeals does not explicitly rely on United States Supreme Court precedent, it applies the *Jackson* standard. Indeed, the standard set forth in *People v. Wolfe*, 489 N.W.2d 748, 751 (Mich. 1992), on which the court of appeals predominantly relies, was drawn expressly from *Jackson*, 443 U.S. 307.

Although the evidence in the instant case was largely circumstantial, it was sufficient to support the conclusion that Petitioner had a gun with him when he ran from the vehicle, that he hid the firearm in a snow bank, and that he lost his cell phone while doing so. In addition to the facts described by the court of appeals, the time that elapsed between when Petitioner began to run and when Wuis and Boris began to search was only three to five minutes. The total amount of time that elapsed was far less than one hour. Further, Petitioner acknowledged that the cell phone was his, and the phone was located only a few feet from the handgun. Petitioner's admissions show that Petitioner unquestionably ran past the site. Given that the entire

12

episode happened on fresh snow, and given that the trained dog located a gun -- the sort of item that would be wholly unlikely to be abandoned or remain abandoned outside – near the dropped phone, a jury reasonably could conclude beyond a reasonable doubt that Petitioner had possessed and hidden the gun.

Taken together, in light of the double deference owed to the state-court's determination of the issue, *Davis*, 658 F.3d at 531, I recommend that Petitioner's first habeas ground be denied.

## II. Ground II: Denial of Fair and Impartial Jury

In his second ground for habeas relief, Petitioner complains that the trial court deprived him of a fair trial by failing to rule on defense counsel's motion to excuse the entire jury panel after a juror, who was subsequently excused, mentioned his dissatisfaction with defense counsel's prior representation of the juror's daughter.

"[T]he right to a jury trial guarantees to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." *Irwin v. Dowd*, 366 U.S. 717, 722 (1961); *see also Morgan v. Illinois*, 504 U.S. 719, 727 (1992). Nevertheless, a jury is presumed to be impartial. *Id.* at 723. The defendant wishing to challenge a juror's impartiality must produce evidence of partiality that cannot be set aside. *Id.* A simple expression of a preconceived notion is insufficient to rebut the presumption of impartiality. *United States v. Guzman*, 450 F.3d 627, 629-30 (6th Cir. 2006) (citing *Irwin*, 366 U.S. at 723). Instead, a defendant must show that the juror could not set aside that notion and decide the case solely on the evidence produced at trial. *Irwin*, 366 U.S. at 723. In addition, "jury selection . . . is 'particularly within the province of the trial judge.'" *Skilling v. United States*, 561 U.S. 358, 386 (2010) (quoting *Ristaino v. Ross*, 424 U.S. 589, 594-95 (1976)).

13

On habeas review, a federal court may only overturn a state-court finding of juror impartiality if such a finding is "manifestly erroneous." *DeLisle v. Rivers*, 161 F.3d 370, 382 (6th Cir. 1998) (citing *Mu'Min v. Virginia*, 500 U.S. 415, 428 (1991), and *Patton v. Yount*, 467 U.S. 1025, 1031 (1984)).

> The Michigan Court of Appeals addressed the issue as follows:
>
> Next, defendant argues that the trial court abused its discretion when it did not rule on the record with regard to defense counsel's motion for a new jury panel and pool.  We disagree.
>
> During voir dire, a potential juror stated before the entire jury pool that defense counsel previously represented his daughter and treated her unfairly.  Defendant then made his motion.  Following a sidebar, the trial court dismissed the prospective juror and jury selection continued.  Defendant now challenges the trial court's failure to expressly rule on his motion to excuse the entire panel and pool.  Defendant never objected to the trial court's decision not to rule on the record with regard to his motion, so our review is for plain error affecting substantial rights. *Carines*, 460 Mich at 763.
>
> Pursuant to MCR 6.412(D)(2), the trial court dismissed the potential juror with a preconceived bias against defense counsel.  After hearing arguments from both sides and taking a brief recess, the trial court resumed jury selection with the same jury panel and pool.  By doing so, the trial court made an implicit decision on defense counsel's motion.  We discern no plain error from the way in which the trial court ruled, and defendant does not explain, analyze, or cite authority to support his position that the court's decision not to enter its decision on the record affected his substantial rights. *People v Martin*, 271 Mich App 280, 315; 721 NW2d 815 (2006) (stating that a defendant abandons a claim of error by failing to sufficiently explain an argument or provide citation to supporting authority).
>
> Moreover, defendant waived any claim that the jury was prejudiced or that the trial court should have excused the jury panel and pool because, on two occasions, defense counsel expressed affirmative satisfaction with the jury that was empaneled.  See *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (defining "waiver" as the "intentional relinquishment or abandonment of a known right"); *People v Fetterley*, 229 Mich App 511, 520; 583 NW2d 199 (1998) (stating that a defendant is not allowed to waive objection to an issue at trial and then claim error on appeal because "[t]o hold otherwise would allow [a] defendant to harbor error as an appellate parachute").  Accordingly, defendant has not demonstrated that he is entitled to relief on this issue.

(Mich. Ct. App. Op., ECF No. 6-6, PageID.205.)

To the extent that Petitioner argues that the trial court abused its discretion in failing to excuse allegedly biased jurors under state law, his claim is not cognizable in this proceeding. "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'" *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)). A habeas petition must "state facts that point to a 'real possibility of constitutional error.'" *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, Rules Governing Habeas Corpus Cases). It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

Moreover, to the extent that Petitioner alleges that he was deprived of due process, his claim fails for a variety of reasons. First, Petitioner's claim appears to be procedurally defaulted, as the court of appeals held that counsel had not reasserted his objection, as required by state law. "If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention – whether in trial, appellate, or habeas proceedings, as state law may require – procedural default will bar federal review." *Magwood v. Patterson*, 561 U.S. 320, 340 (2010). Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding

15

against the petitioner on the merits even though the claim was procedurally defaulted)). *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State."). Because the claim is easily resolvable on the merits, I will dispense with the procedural default analysis. *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

Second, the court of appeals found that the trial court had, in fact, implicitly ruled on the defense motion, when it permitted voir dire to continue after sidebar discussions. That factual finding is patently reasonable on the record and entitled to a presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 42; *Bailey*, 271 F.3d at 656; *Sumner v. Mata*, 449 U.S. at 46 (1981); *Smith*, 888 F.2d at 407 n.4. Petitioner has utterly failed to overcome the presumption of correctness accorded to the court's determination. 28 U.S.C. § 2254e(1). Therefore, because the court in fact ruled on Petitioner's motion, even if it did not do so on the record, Petitioner did not suffer harm by the alleged failure to rule on the motion.

Third, as the court of appeals also held, Petitioner, through counsel, waived any continuing objection to the jury panel by twice agreeing that he was satisfied with the jury. The court of appeals' determination regarding waiver was equally reasonable on the facts presented. As I noted in my earlier summary of the facts, defense counsel repeatedly expressed his satisfaction with the jury after the completion of voir dire. (T. Tr. I, ECF No. 6-3, PageID.148-149.) Petitioner does not challenge the effectiveness of trial counsel in dropping the objection. He therefore cannot show that the trial court erred. *See United States v. Miller*, 227 F. App'x 446, 453 (6th Cir. 2007) (upholding denial of motion to strike the panel based on co-defendant's attorney's comment on the testimony of a defendant, where the attorney moved to strike without inquiring into impacts on

other jurors); *United States v. Shropshire*, 498 F.2d 137, 139 (6th Cir. 1974) (upholding denial of motion to strike the jury panel, despite a potential juror's expression of opinion about the defendant in a different case).

Fourth, even if Petitioner did not waive further resolution of his motion, he has utterly failed to overcome the presumption of juror impartiality. *Irwin*, 366 U.S. at 723. At most, the jury heard one juror, who was thereafter removed from the jury, comment that he had not been satisfied with the defense attorney's performance in another case. Such a statement does not go to the heart of any factfinding with respect to Petitioner himself. Indeed, rather than biasing the jury against Petitioner, the comment was more likely to encourage the jury to be cautious in making judgments against Petitioner because of concern about how effectively defense counsel had represented him. In any event, given the careful questioning of each juror about his or her ability to be fair, and in light of the court's repeated jury instructions regarding the importance of considering only the evidence at trial (T. Tr. I, ECF No. 6-3, 151-152; T. Tr. II, ECF No. 6-4, PageID.193-194), such a simple statement falls short of demonstrating the existence of bias by any juror who remained on the panel. *See Irwin*, 366 U.S. at 722 (recognizing that, if an entire panel were presumed tainted by another juror's comments, "every time a juror stated an opinion, favorable or unfavorable, about a party, and was later excused, it would be almost impossible to obtain a jury . . . ."). The court of appeals therefore reasonably found that Petitioner had not been denied an impartial jury by the trial court's failure to deny his motion on the record.

In sum, Petitioner fails to demonstrate that the state court's denial of his second habeas ground was based on an unreasonable determination of the facts or that it was contrary to or an unreasonable application of clearly established Supreme Court precedent.

### Certificate of Appealability

Unless a certificate of appealability is issued, an appeal of the denial of a habeas corpus petition may not be taken.  28 U.S.C. § 2253(c)(1).  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.

I have examined each of Petitioner's claims under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  Under *Slack*, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists would not conclude that this Court's denial of Petitioner's claims is debatable or wrong.

**Recommended Disposition**

For the foregoing reasons, I respectfully recommend that the habeas corpus petition be denied. I further recommend that a certificate of appealability be denied. *See Slack v. McDaniel*, 529 U.S. 473 (2000).


Dated:  January 17, 2018                                  /s/ RAY KENT
                                                          United States Magistrate Judge


**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within 14 days of service of this notice on you. 28 U.S.C. § 636(b)(1)(c); Fed. R. Civ. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).